**Shannon Armstrong**, OSB No. 060113
shannon.armstrong@hklaw.com
**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300
Fax:  503.241.8014

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| PIONEER NURSING HOME HEALTH DISTRICT, an Oregon nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR REFUND**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Pioneer Nursing Home Health District ("Plaintiff") brings this action against defendant United States of America ("Defendant"), acting by and through the Internal Revenue Service ("IRS"), for a refund of Employee Retention Credits totaling $241,285.07 plus interest and additional amounts as provided by law, pursuant to Internal Revenue Code ("I.R.C.") § 7422. To the extent applicable, Plaintiff seeks reasonable litigation and administrative costs as permitted by I.R.C. § 7430. In support thereof, Plaintiff alleges:

## PARTIES

1.

Plaintiff is in the business of providing assisted living and continuing care facilities for individuals.

2.

Plaintiff is an Oregon domestic nonprofit corporation with a principal place of business located at 1060 D Street West, Vale, Oregon 97918.

3.

Defendant is the United States of America.

## JURISDICTION AND VENUE

4.

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(1).

5.

Venue in this Court is proper under 28 U.S.C. § 1402.

6.

Plaintiff brings this action under I.R.C. § 7422 to recover refunds of overpaid federal employment taxes, plus interest, for the tax quarter ending June 30, 2021 ("quarter at issue").

7.

On or about March 27, 2023, Plaintiff mailed Form 941-X for the quarter at issue seeking an employment tax refund from the IRS ("ERC Refund Claim").

8.

The action is proper under I.R.C. § 6532(a)(1), as more than six months have passed since Plaintiff filed its ERC Refund Claim with the IRS.

9.

The IRS has not paid Plaintiff's ERC Refund Claim.

## NATURE OF ACTION

10.

Plaintiff files this civil action under I.R.C. § 7422 for the recovery of employment taxes, including the refundable excess credit (together with statutory interest and any appropriate attorney's fees), authorized to be paid to the Plaintiff under § 2301 of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020) (as amended by § 207 of the Taxpayer Certainty and Disaster Relief Act of 2020 ("Relief Act"), Pub. L. No. 116-260, 134 Stat. 1182, 3061 (Dec. 27, 2020)), and I.R.C. § 3134.[1]

## BACKGROUND

A.   **The Employee Retention Credit**

11.

Beginning in 2020, the COVID-19 virus created a global pandemic that swept through all fifty states and resulted in governmental orders addressing the pandemic that disrupted the United States' local and national economies.

12.

Those orders formed a latticework of federal, state, and local government mandates that created a comprehensive regulatory scheme limiting commerce, travel, and group meetings with the objective to limit the spread of COVID-19.

---

[1] For ease of reference, references to the CARES Act and to I.R.C. § 3134 are to the versions of the statutes in effect during the quarter at issue.

13.

The governmental response to that public health emergency involved historically unprecedented measures, including lockdown orders, social distancing mandates, and forced business closures.

14.

The economic effects of those policies were profound and the estimated cumulative financial costs of COVID-19 were forecast at $16 trillion.  *See* Alvin Powell, *What might COVID cost the U.S.? Try $16 trillion*, THE HARVARD GAZETTE, Nov. 10, 2020, https://news.harvard.edu/gazette/story/2020/11/what-might-covid-cost-the-u-s-experts-eye-16 trillion/.

15.

In response to the COVID-19 pandemic, the federal government enacted sweeping economic measures to assist American businesses and citizens, including the CARES Act, enacted in March 2020.  Section 2301 of the CARES Act created the ERC.

16.

The ERC is a broad-based, fully refundable tax credit designed to stimulate economic recovery, support job retention, encourage business sustainability, and mitigate the impacts on U.S. businesses from the unprecedented challenges posed by the pandemic.

17.

Congress intended for the credit to be broadly applicable to help businesses survive a historic pandemic that disrupted the global economy.

18.

The credit is generally available to eligible employers for the last three quarters of 2020 and for the first three quarters of 2021.

### B.    Threshold Requirement:  Carrying on a Trade or Business

19.

An employer is eligible to claim an ERC if it carried on a trade or business during the quarter at issue.  *See* CARES Act § 2301(c)(2); I.R.C. § 3134(c)(2).

### C.    Eligible Employer:  Gross Receipts Test

20.

Under § 2301(c)(2)(B) of the CARES Act, as amended by § 207(d)(1)(A) of the Relief Act, and I.R.C. § 3134(c)(2)(A)(ii)(II), taxpayers are entitled to a credit if they experience a significant decline in gross receipts ("gross receipts test"). For 2021, significant decline in gross receipts occurs when "gross receipts . . . are less than 80 percent of the gross receipts of such employer for the same calendar quarter in calendar year 2019." In other words, gross receipts for a quarter at issue in 2021 must be less than 80 percent of the gross receipts for the same quarter in 2019.

21.

Additionally, under § 2301(c)(2) of the CARES Act, as amended by § 207(d)(2)(A) of the Relief Act, and I.R.C. § 3134(c)(2)(B), a taxpayer is eligible for the ERC if the quarter immediately before the quarter at issue satisfies the gross receipts test.

### D.    Qualified Wages

22.

Under § 2301(a) of the CARES Act and I.R.C. § 3134(a), an "eligible employer" is "allowed a credit against applicable employment taxes for each calendar quarter equal to" a percentage of the "qualified wages" paid with "respect to each employee of such employer for such calendar quarter[s]."

23.

Under § 2301(c)(3) and (c)(5) of the CARES Act and I.R.C. § 3134(c)(3) and (c)(4), "qualified wages" include "wages" as defined by I.R.C. § 3121(a) and certain "health plan expenses."

24.

In 2021, eligible employers are allowed a credit against applicable employment taxes for each calendar quarter that is equal to 70 percent of qualified wages paid with respect to each employee of such an employer for such calendar quarter. Under § 2301(b) of the CARES Act, as amended by § 207 of the Relief Act, and I.R.C. § 3134(b), the maximum amount of qualified wages per employee an employer may take into account for any calendar quarter in 2021 is $10,000. In other words, the maximum credit amount an employer may claim per employee for each calendar quarter in 2021 is $7,000.

25.

"Qualified wages" do not include payroll costs used for loans under the "Paycheck Protection Program" of the CARES Act ("PPP loan") that were "forgiven." *See* I.R.C. § 3134(h)(2).

26.

In 2019, the average number of full-time employees Plaintiff employed was 100 or fewer.

## STATEMENT OF FACTS

27.

During the quarter at issue, Plaintiff was in the business of providing assisted living and continuing care facilities to individuals.

28.

Specifically, Plaintiff provided customers with skilled nursing services, long-term care, assisted living, physical therapy, occupational therapy, and speech therapy.

29.

Plaintiff experienced a significant decline in gross receipts during the first quarter of 2021.

30.

More than six months have passed since Plaintiff filed its ERC Refund Claim.

31.

The IRS has not issued an ERC Refund for the quarter at issue nor has it disallowed the ERC Refund Claim.

### *Facts Relevant to Claim for Second Quarter of 2021 (April 1, 2021, through June 30, 2021) Under the Alternative Quarter Test*

32.

In the first quarter of 2019, Plaintiff had $1,904,176 in gross receipts.

33.

In the first quarter of 2021, Plaintiff had $1,196,083 in gross receipts.

34.

Eighty percent of the gross receipts for the first quarter of 2019 is $1,523,340.

35.

The gross receipts for the first quarter of 2021 ($1,196,083) are less than eighty percent of the gross receipts for the first quarter of 2019 ($1,523,340).

## COUNT ONE:  QUARTER TWO OF 2021

36.

Plaintiff incorporates by reference paragraphs 1 through 35.

37.

On or about March 27, 2023, Plaintiff timely filed a Form 941-X, *Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund*, claiming the ERC for the second quarter of 2021 ("Q2 2021 Form 941-X").

38.

Line 18a of the Q2 2021 Form 941-X reported that Plaintiff's nonrefundable portion of the ERC was $36,479.17.

39.

Line 26a of the Q2 2021 Form 941-X reported that Plaintiff's refundable portion of the ERC was $204,805.07.

40.

Line 30 of the Q2 2021 Form 941-X reported $344,692.95 in qualified wages for the ERC.

41.

Plaintiff did not receive a PPP loan and none of the qualified wages paid by Plaintiff were payroll costs paid from proceeds from a PPP loan.

42.

Plaintiff paid wages and compensation to its employees during the second quarter of 2021.

43.

Plaintiff is an eligible employer for the ERC because it experienced a significant decline in gross receipts, within the meaning of the CARES Act, during the first quarter of 2021, which immediately preceded the tax quarter at issue herein.

44.

Based on the foregoing, Plaintiff is entitled to a refund of $241,285.07 for the second quarter of 2021.

## DEMAND FOR JURY TRIAL

45.

Plaintiff demands a jury trial on all the issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant judgment in its favor against the Defendant for:

a. A refund in the amount of at least $241,285.07 or such other amount as the Court determines to be refundable, plus statutory interest on that amount as provided by law;

b. Reasonable litigation and administrative costs, including attorneys' fees, as allowed by law; and

    c.    All further relief the Court deems appropriate.

Dated this 1st day of May, 2025.

        HOLLAND & KNIGHT LLP

        By:  *s/Shannon Armstrong*
        Shannon Armstrong, OSB No. 060113
        shannon.armstrong@hklaw.com
        601 SW Second Avenue, Suite 1800
        Portland, OR 97204
        Telephone: 503.243.2300
        Fax: 503.241.8014

        Brock E. Whalen (*pro hac vice* forthcoming)
        Brock.Whalen@hklaw.com
        98 San Jacinto Blvd., Suite 1900
        Austin, TX 78701
        Telephone: 512.647.4387

        Samantha Skabelund (*pro hac vice* forthcoming)
        samantha.skabelund@hklaw.com
        800 17th Street N.W., Suite 1100
        Washington, DC 20006
        Telephone: 202.469.5649

        Attorneys for Plaintiff